**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LISA PIERRO,**

                    **Plaintiff,**

            **v.**

**HUDSON CITY SCHOOL**
**DISTRICT et al.,**

                  **Defendants.**
_____

**1:22-cv-670**
**(GLS/CFH)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Law Office of Michael J. Livolsi, Esq. | MICHAEL J. LIVOLSI, ESQ. |
| 5 Computer Drive West - Suite 100-12 | |
| Albany, NY 12205 | |
| | |
| **FOR THE DEFENDANTS:** | |
| _Hudson City School District,Lismarie_ | |
| _Spindler, Hudson City School the_ | |
| _Board of Education, Willette Jones,_ | |
| _Mark Depace, Sage Carter, Selha_ | |
| _Graham, Chuck Parmentier, Lucinda_ | |
| _Segar, Lakia Walker_ | |
| Johnson & Laws, LLC | GREGG T. JOHNSON, ESQ. |
| 646 Plank Road, Suite 205 | LORAINE CLARE JELINEK, |
| Clifton Park, NY 12065 | ESQ. |
| | |
| _Paul Stalker , Paul Rowley,_ | NO APPEARANCE |
| _Timothy Call_ | |
| | |
| _Timonthy Vankeuren_ | RYAN M. FINN, ESQ. |
| Finn Law Offices | |
| P.O. Box 966 | |

Albany, NY 12201

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Lisa Pierro commenced this action against the Hudson City School

District (HCSD), the Hudson City School Board of Education,

Superintendent of HCSD Lisamarie Spindler, members of the Board of

Education Willette Jones, Mark Depace, Sage Carter, Selha Graham,

Chuck Parmentier, Lucinda Segar, and Lakia Walker, HCSD Human

Resource Manager Rachel Rissetto, HCSD Business Administrator

Jonathan Jesse Boehme, former Superintendent of HCSD Maria Suttmeir

(hereinafter, collectively referred to as the "District Defendants"), Paul

Stalker, Paul Rowley, Timothy Vankeuren, and Timothy Call, pursuant to

42 U.S.C. § 1983, Title VII and Title IX of the Civil Rights Act of 1964, and

New York State law, with the individual District Defendants all being sued

in their individual and official capacities.  (Proposed 2d Am. Compl.,[1] Dkt. No. 14 at 19-66.[2])

Pending before the court are the District Defendants' motions to dismiss the amended complaint, (Dkt. No.11), and to "withdraw [an] argument that Plaintiff's Title VII claim . . . is premature,"  (Dkt. No. 21), and Pierro's cross-motion to amend her amended complaint, (Dkt. No. 15). For the reasons that follow, Pierro's motion to amend the amended complaint is granted, the District Defendants' motion to withdraw is granted and their motion to dismiss is granted in part and denied in part.

## II.  Background

### A.    Facts[3]

Pierro was hired by HCSD in December 2016 as a part-time receiving clerk, eventually achieving full-time employment status. (Proposed 2d Am. Compl. ¶ 26.)  Beginning in June 2017, Pierro was subjected to "extreme, pervasive, and inescapable acts of harassment,

---

[1]  Because Pierro's cross motion for leave to amend, (Dkt. No. 15), is granted, as discussed below, the court construes the motion to dismiss as made against the proposed second amended complaint, (Dkt. No. 14 at 19-66).

[2]  Citation refers to the pagination generated by CM/ECF, the Court's electronic filing system.

[3]   Consistent with the standard of review, the facts are drawn from Pierro's second amended complaint, and presented in the light most favorable to her.

3

discrimination, retaliation, and various forms of sexual misconduct and abuse" from her co-workers, supervisors, and HCSD management and leadership. (*Id.* ¶ 27.) For instance, several of Pierro's co-workers, including Stalker, Rowley, Vankeuren, and Call, called Pierro a pig "on a daily basis," told her she smelled bad, called her fat and ugly, and made sexual gestures towards her. (*Id.* ¶¶ 30-32, 34.) Pierro reported this conduct to her supervisor, George Keeler, in 2019, who advised Pierro to avoid her co-workers, despite the fact that Pierro already told her co-workers to stay away from her and much of the reported harassment occurred when her co-workers entered her office "unsolicited." (*Id.* ¶¶ 28, 37-38.) After Pierro reported her co-workers' conduct to Keeler, her co-workers escalated their behavior including sniffing her hair without her consent and hanging an image of a cow outside of her office in reference to her appearance. (*Id.* ¶¶ 39-42.)

In April 2020, Pierro made an official complaint of "harassment, sexual discrimination, sexual abuse, sexual harassment, and retaliation" to Spindler, Boehme, and Suttmeir, informing them of her co-workers' conduct. (*Id*. ¶ 43.) HCSD did not conduct an investigation into Pierro's complaint and informed her that they did not believe her. (*Id.* ¶ 44.)

4

However, HSCD did mandate a "sensitivity training" for all employees, but the training did not address any of the underlying conduct in Pierro's complaint to HCSD.  (*Id.* ¶ 46.)  Following Pierro's April 2020 complaint, her co-workers escalated their conduct to include threats of violence.   (*Id.* ¶¶ 47-48.)  For instance, Pierro's co-workers placed a picture of a dead rat on her desk, "insinuating that she had 'ratted' on her co-workers" for making the complaint.  (*Id*. ¶ 48.)   Additionally, the insults escalated to include "whore," "skank," "bitch," and "co-arc leader.[4]"  (*Id.* ¶ 50.)

In June 2020, Keeler retired and, "in retaliation for reporting the sexual harassment, discrimination, retaliation and abuse of her co-workers," his duties were re-assigned to Pierro without "a corresponding increase in pay or promotion."  (*Id.* ¶¶ 51-52, 54.)  Later, the HCSD Board of Education voted to promote Stalker to Keeler's position while aware that Pierro's April 2020 complaint had identified Stalker as one of the co-workers who engaged in the harassing conduct she reported.  (*Id.* ¶¶ 57-58.)  After Stalker's promotion, the harassing conduct continued, including spreading rumors about Pierro having sexual relations with other HCSD employees, leaving "personal lubricant jelly" on her desk, sending her text

---

[4]  Pierro alleges that "co-arc leader" was a derogatory reference to individuals with disabilities.  (Proposed 2d Amend. Compl. ¶ 50.)¶

messages and placing images around her office that looked like genitalia, which included images Pierro perceived to insinuate sexual violence against her. (*Id*. ¶¶ 62-64, 66, 71, 76-79, 86.)  In April 2021, Pierro made a second official complaint to HCSD management regarding her co-workers. (*Id.* ¶ 87.)  Following the second complaint, in May 2021, Rowley, Stalker, and Vankeuren were permitted to resign in lieu of termination.  (*Id.* ¶ 93.) Call did not resign and was not terminated but, instead, was promoted.  (*Id*. ¶ 96.)  In June 2021, Pierro made another complaint to Spindler, Boehme, and Suttmeir against Call for "harassment and unwelcome physical contact," including grabbing his crotch and gesturing to Pierro while stating "you like," insinuating acts of sexual violence against her with a mop, and sending sexual text messages to her.  (*Id.* ¶ 89.)

In October 2021, Pierro heard co-workers discussing her directly outside of her office, with one co-worker stating "that fucking bitch should have been fired" and her new supervisor, Tyler Kritzman, stated that Pierro would be replaced soon.  (*Id.* ¶¶ 96- 98, 100.)  "Upon information and belief" Kritzman made the statement because Spindler, Boehme, and Suttmeir relayed the idea of replacing Pierro to Kritzman. (*Id.* ¶ 98.)  On December 13, 2021, Spindler, Boehme, Suttmeir, and the Board of

Education placed Pierro on administrative leave and later suspended her without pay on March 22, 2022.  (*Id*. ¶¶ 101-02.)  In addition to the suspension, Pierro was barred from entering school property for any reason, including attending Board of Education meetings or sporting events for her son, who is a student at HCSD, and having the opportunity to interview in-person for a vacant position for which she was qualified.  (*Id.* ¶¶ 119, 121.)  Sometime prior to being placed on administrative leave, Pierro was advised in a memo from HCSD that "false and defamatory allegations" were made against her by co-workers.  (*Id.* ¶¶ 104, 117.)  In response, Pierro filed charges with the New York State Division of Human Rights.  (*Id.* ¶¶ 116-118.)  Pierro eventually submitted a letter of resignation, which the Board of Education refused to accept and, instead, sought to bring Pierro to a disciplinary hearing "if [she] refused to recant her allegations" with the Division of Human Rights.  (*Id.* ¶¶ 128-131.)

**B.   Procedural History**

Pierro commenced this action in May 2022 in New York State Supreme Court in Columbia County.  (Dkt. No. 2.)  The action was removed to this court.  (Dkt. No. 1.)  District Defendants moved to dismiss the complaint and Pierro thereafter filed an amended complaint.  (Dkt. Nos.

4, 5.)  District Defendants now move to dismiss the claims against them and Pierro has cross-moved to amend her complaint for a second time. (Dkt. Nos. 11, 15.)

### III.  <u>Standard of Review</u>

### A.  <u>Leave to Amend</u>

The filing of an amended complaint is governed by Rule 15 of the Federal Rules of Civil Procedure.  Rule 15 provides that courts "should freely give leave" to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility."  *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (citation omitted).  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see Monahan*, 214 F.3d at 283. The decision to grant or deny a motion to amend is committed to the sound

discretion of the trial court, and the court's decision is not subject to review on appeal except for abuse of discretion.  *See Fielding v. Tollaksen*, 510 F.3d 175, 179 (2d Cir. 2007).

## B.    Motion to Dismiss

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786  F.3d 191 (2d Cir. 2015).

## IV.  Discussion

As a preliminary matter, Pierro asserts a claim labeled as the "Ninth Cause of Action."  The claim Pierro is asserting here is unclear to both the court and District Defendants, and Pierro provides no clarity in her response or proposed second amended complaint.  (Dkt. Nos. 13, 14.) The court's best guess is that Pierro's "Ninth Cause of Action" is a prayer for damages and construes it as such.

## A.    Pierro's Motion to Amend

District Defendants oppose Pierro's motion for leave to amend, contending it should be denied because amendment would be prejudicial and futile.  (Dkt. No. 20 at 10.)  Specifically, District Defendants contend that Pierro has already amended once, "offers no argument to justify a third opportunity to plead her claims," and her proposed amendments "do not salvage her claims."  (*Id.*)

A party opposing a motion to amend on grounds of undue prejudice has the burden of establishing that "granting such leave would be unduly prejudicial."  *Breyette v. Amedore*, 205 F.R.D. 416, 418 (N.D.N.Y. 2002) (internal citation and quotation marks omitted).  In determining what constitutes prejudice, courts consider whether the amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Id.*  With respect to futility, "an amendment is considered futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Nat'l Rifle Ass'n of Am. v. Cuomo*, 480 F. Supp. 3d 404, 414 (N.D.N.Y. Aug. 14, 2020).  Because the cross-motion to amend has been made at a relatively early stage of the

10

proceeding–approximately three months after filing the original complaint in New York State Supreme Court–and Pierro seeks to add allegations to support personal involvement of the District Defendants, Pierro's proposed second amended complaint is not unduly prejudicial or futile and her motion to amend is granted.  However, the court notes that Pierro's motion to amend did not strictly comply with the Local Rules of Practice because the proposed amended pleading was not attached to the motion papers but rather was filed as an exhibit to an Attorney Declaration, along with several other exhibits.  The proposed second amended complaint does not incorporate any of these other exhibits by reference and thus, the court will only consider the allegations within the proposed second amended complaint, (Dkt. No. 14 at 19-66), and not the other exhibits also attached to the attorney declaration.  *See* Fed. R. Civ. P. 12(d).

**B.**   **State Law Claims**

District Defendants seek dismissal of Pierro's claims under New York state law because Pierro failed to serve a notice of claim upon any of the District Defendants nor did she "affirmatively plead compliance with the [notice of claim requirements] . . . as prescribed by § 3813 of New York's Education Law." (Dkt. No. 11, Attach. 1 at 10.)  Pierro argues that she was

11

not required to file a notice of claim because "[i]t is well settled that the

service, by the NYS Division of Human Rights, of a complaint upon a

District satisfies the notice of claim requirement."  (Dkt. No. 13 at  10.)

Additionally, Pierro contends that a notice of claim was eventually served

on August 11, 2022, approximately three months after the action was

commenced in New York State Supreme Court.  (Dkt. No. 13 at 11; Dkt.

No. 19.)

> New York Education Law § 3813(1) mandates that:
>
> No . . . claim against the district . . . shall be prosecuted or maintained against any school district, board of education, . . . or any officer of a school district, board of education, . . . unless it shall appear by and as an allegation in the complaint . . . that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

Section 3813(2), however, mandates that actions "founded upon tort"

against any party enumerated in Section 3813(1) comply with the notice of

claim requirements set forth in New York General Municipal Law §§ 50-e

and 50-i.  Both Sections 3813 and 50 require the plaintiff to plead on the

face of the complaint that they complied with the notice of claim

requirements and "are strictly interpreted by New York courts, and no

variation is tolerated." *See Wang v. Bethlehem Cent. Sch. Dist.*, 1:21-CV-1023, 2022 WL 3154142, at *13 (N.D.N.Y.  Aug. 8, 2022).  Additionally, while courts have found that other documents can satisfy the notice of claim requirement, such as a charge filed with the Equal Employment Opportunity Commission, this is only "in limited circumstances where the charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district . . . , and is served within the statutory time period.  *See United States v. N.Y.C. Dep't. of Educ.*, 16 Civ. 4291, 2017 WL 1169653, at *3 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks and citation omitted).

Here, although Pierro did serve a notice of claim upon the District Defendants on August 11, 2022, almost three months after this action was commenced in New York State Supreme Court, she did not plead compliance with the notice of claim requirements in her first amended complaint, (Dkt. No. 5), nor did she attempt to rectify the deficiency in her proposed second amended complaint, (Dkt. No. 14), despite the fact that District Defendants previously raised this deficiency in their motion to dismiss.  (Dkt. No. 11, Attach. 1 at 10-12).  Additionally, Pierro alleges that she filed a charge with the New York State Division of Human rights and

13

asserts that this is sufficient to satisfy the notice of claim requirements, however, the complaint contains no allegations of what claims were alleged in the New York State Division of Human Rights charge and it is impossible for the court to determine whether the charge "puts the school district on notice of the precise claims alleged."  *See United States v. N.Y.C. Dep't. of Educ.*, 2017 WL 1169653, at *3.  Moreover, it is insufficient that Pierro retroactively attempts to establish that she met the notice requirement because she was required to plead compliance with the requirement and she failed to do so.  *See Wang*, 2022 WL 3154142, at *14.  Therefore, all of Pierro's New York State law claims against District Defendants must be dismissed because Pierro did not comply with the notice of claim requirements.

## C.   Individual Liability Under Title VII and Title IX[5]

District Defendants seek dismissal of Pierro's Title VII claims against the individual District Defendants because, District Defendants contend, individuals are not employers under the meaning of Title VII.  (Dkt. No. 11,

---

[5]  District Defendants also argue that Pierro's Title IX claims are barred by the ruling in *Cummings v. Premier Rehab Keller*, *P.L.L.C.*, 142 S. Ct. 1562 (2022), contending this decision bars compensatory damages.  (Dkt. No. 11, Attach. 1 at 8.)  District Defendants appear mistaken, as the holding in *Cummings* addressed only compensatory damages for emotional distress.  Here, Pierro seeks damages in addition to emotional distress, (Proposed 2d Am. Compl. ¶¶ 168-71.)  Thus, District Defendants' motion is granted but only with respect to damages for emotional distress under Title IX.

Attach. 1 at 7-8.)  Additionally, District Defendants seek dismissal of Pierro's Title IX claims against the individual District Defendants because individuals are not amenable to suit under Title IX.  (*Id.* at 8.)  Pierro maintains that it is "well established" that individual defendants can be liable under Title VII and that "all individual [District Defendants] either . . . directly harassed P[ierro], or retaliated against [her]."  (Dkt. No. 14 at 8.) Pierro also contends that courts allow Title IX claims to be brought pursuant to 42 U.S.C. § 1983 and it is "well established that individual . . . liability is available in actions pursuant to 42 U.S.C. § 1983."  (*Id.* at 9-10.)

District Defendants are correct.  With respect to individual liability under Title VII, the Second Circuit has established that Title VII claims cannot be made against individuals, and, thus, to the extent Pierro brings Title VII claims against individual District Defendants, they should be dismissed.  *See Malcom v. Ass'n of Supervisors and Adm'rs of Rochester*, F. App'x. 1, 4 (2d Cir. 2020); *Hamlett v. City of Binghamton*, 3:20-cv-880, 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021).  Regarding individual liability under Title IX, "[n]umerous district courts in the Second Circuit . . . have held that there is no individual liability under Title IX."  *Miotto v. Yonkers Public Schs.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008)

15

(collecting cases).  Accordingly, Pierro's Title VII and Title IX claims against the individual District Defendants must be dismissed.  *See Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 364 (N.D.N.Y. 2014) (dismissing Tittle VII and Title IX claims against all individual defendants "because those statutes apply only to the education entity who receives the federal funds")

## D.    Personal Involvement

District Defendants argue that Pierro's Section 1983 claims against them in their individual capacities must be dismissed because she has not alleged personal involvement in the alleged unlawful conduct.  (Dkt. No. 11, Attach. 1 at 12-16.)[6]  Pierro briefly counters she "plead[ed] the action of each and every board member."  (Dkt. No. 13 at 13.)

"Unlike Title VII, which can only be brought against an employer, a § 1983 discrimination claim can be brought against any individual responsible for the discrimination.  However, a plaintiff must prove that the individual she pursues under § 1983 was personally involved in her alleged constitutional violation."  *Peck v. County of Onondaga,* 5:21-CV-651,  2021 WL 3710546, at 9 (N.D.N.Y. Aug. 20, 2021) (internal quotation marks and

---

[6]  With the exception of arguing against the merits of Pierro's First Amendment claims, *see infra* Part IV.F, District Defendants do not appear to raise any other arguments for dismissal of Pierro's Section 1983 claims other than lack of personal involvement.  (*See generally* Dkt. No. 11, Attach. 1).

citations omitted).  "It is well settled in this Circuit that 'personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *See Johnson v. Miller*, No. 9:20-CV-622, 2020 WL 4346896, at *9 (N.D.N.Y. Jul. 29, 2020) (internal quotation marks and citations omitted).  That is to say, plaintiffs "must allege a tangible connection between the acts of the defendant and the injuries suffered."  *Id.* (internal quotation marks and citation omitted).  As to supervisory liability, there is no "special test," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 614 (2d Cir. 2020) (internal quotation marks and citation omitted).

The proposed second amended complaint lays out the following allegedly unconstitutional acts by District Defendants: (1) failing to take meaningful action after Pierro made complaints of harassment to Spindler, Boehme, and Suttmeir; (2) Spindler, Boehme, Suttmeir and the Board of Education each voting to promote Stalker as Pierro's supervisor while aware of the harassment complaints Pierro made against Stalker; (3) Spindler, Boehme, Suttmeir and the Board of Education each voting to

17

place Pierro on administrative leave, and later suspension without pay, following multiple complaints she made against her co-workers; (4) barring Pierro from entering school premises and from attending Board of Education meetings as a parent of a student at HCSD; (5) reassigning Keeler's duties to Pierro without increased pay as an act of retaliation for reporting harassment; (6) failure to promote by denying Pierro the opportunity to interview for a position in-person and not offering her the position for which she was qualified; and (7) refusing to accept Pierro's letter of resignation and pursue termination if she did not rescind her allegation with the Division of Human Rights.[7]

The court notes that the proposed second amended complaint is devoid of any allegations as to HCSD Human Resource Manager Rachel Rissetto's involvement in the alleged deprivations.  In fact, Pierro does not allege Rissetto took any action or had any knowledge of Pierro's reports of harassment.  Accordingly, all Section 1983 claims must be dismissed against Rissetto.

---

[7]  Notably, for the sixth and seventh allegedly unconstitutional acts, Pierro does not attribute to any particular defendants but, rather, generally refers to these as actions taken by "the district."  Because these acts are not attributable to any one defendant, to the extent Pierro attempts to assert claims based on these two acts, including her claim for disparate treatment for failure to promote, against individual defendants, they must be dismissed.

Turning next to Pierro's Section 1983 claims against the members of the Board of Education in their individual capacities, these too must be dismissed.  Pierro never identifies the specific actions of individual members of the Board of Education, but, rather, refers to the Board of Education as a collective group.  Pierro has engaged in "impermissible group pleading," and the proposed second amended complaint "offer[s] nothing to specifically indicate the extent of any individual Board Member's involvement in the complained-of unconstitutional conduct."  *Arnold v. Town of Calimus*, No. 5:20-CV-1364, 2023 WL 2456059, at *12 (N.D.N.Y. Mar. 9, 2023); *see Wilson v. County of Ultser*, No. 1:20-cv-104, 2022 WL 813958, at *7 (N.D.N.Y. Mar. 17, 2022).  Additionally, although Pierro alleges that the members of the Board of Education voted to take certain actions against her while they had knowledge of her complaints to management, Pierro alleges that she made these complaints to Spindler, Boehme, and Suttmeir and fails to articulate what information was relayed to each individual Board member and how each member voted.  Thus, Pierro's allegations of actions taken by the individual members of the Board are not sufficient to plausibly allege personal involvement and Pierro's Section 1983 claims against the individual members of the Board

must be dismissed.  *See Arnold*, 2023 WL 2456059, at 11-12 (dismissing

Section 1983 claims against town board members because plaintiff did not

allege what information regarding her complaint of sexual harassment was

relayed to the individual board members and plaintiff's allegations

constituted "impermissible group pleading" because she did not specifically

allege the involvement of each individual board member).

Pierro does, however, adequately plead personal involvement of

Spindler, Boehme, and Suttmeir.  Pierro alleges that she made multiple

reports to Spindler, Boehme, and Suttmeir and they did not take corrective

action to stop the conduct she reported.  Additionally, Pierro alleges that

Spindler, Boehme, and Suttmeir were responsible for promoting Stalker as

her supervisor, after she had identified him as one of the co-workers

harassing her, and were responsible for placing her on administrative leave

followed by suspension without pay and barred her from entering the

school premises to attend Board of Education meetings.  (Proposed 2d

Am. Compl. ¶ 60.)  Although "fail[ing] to take ameliorative action after

receiving notice of [discrimination]" is insufficient, without more, to establish

personal involvement, *see Quinones v. City of Binghamton*, 2022 WL

43764, at 5 (N.D.N.Y. Jan. 5, 2022), Pierro alleges more than just failure to

take action, she specifically alleges that Spindler, Boehme, and Suttmeir, while aware of Pierro's reports of harassment, were responsible for promoting one of Pierro's alleged harassers to her supervisor and responsible for placing her on leave and barring her from HCSD premises. At this stage, and because District Defendants' only argue for dismissal of these claims for lack of personal involvement, Pierro has pleaded sufficient facts for her Section 1983 claims against Spindler, Boehme, and Suttmeir to survive a motion to dismiss.

**E.** **Monell Liability**

District Defendants argue that Pierro has not pleaded "any specific policy, practice, custom . . . which caused an alleged violation of P[ierro]'s constitutional rights. (Dkt. No. 11, Attach. 1 at 18-19.) Pierro counters that she has adequately pleaded a *Monell* claim because, as she contends, "municipal liability can be inferred where repeat violations occurred in the face of acquiescence" and she "stated several years of continuing violations, . . . harm, . . . threats of sexual violence, . . . retaliation, . . . harassment, and . . . discrimination" and that she made several reports to

management and HCSD "utterly failed to act" to protect her.  (Dkt. No. 13 at 14-15.)

A municipality may be liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To establish a municipal policy or custom, a plaintiff must allege (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates.  *See Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006).  Generally, under New York Education Law, a superintended may be considered a "decision-maker," but the Board of Education is the "final policymaker."  *Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 438-39 (E.D.N.Y Mar. 16, 2016.)  A municipal policymaker's deliberate indifference to the unconstitutional actions, or risk of unconstitutional actions, of municipal employees can establish municipal liability pursuant to Section 1983.  *See*

22

*Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  To establish deliberate indifference, the policymaker must be aware of constitutional injury, or the risk of constitutional injury, but did not take appropriate action to prevent or sanction the conduct causing the injury.  *See id.*  Such inaction must be a "conscious choice" rather than mere negligence.

At this juncture, the court is satisfied that Pierro has alleged that the Board of Education, a final policymaker for HCSD, did not take appropriate action to prevent or sanction the conduct Pierro reported.  Not only does Pierro allege lack of appropriate action from the Board of Education, (Proposed 2d Am. Compl. ¶¶ 44, 46, 96), she also alleges specific actions taken by the Board–voting to appoint Stalker as her supervisor, suspend her without pay, and prevent her from attending Board of Education meetings–that were done with the knowledge of Pierro's reports of harassment, which identified Stalker as one of the people engaging in harassing conduct, (*id.* ¶¶ 57-58, 89, 101).  This plausibly suggests that the Board of Education was not merely negligent, but made a conscious choice, while aware of Pierro's reports, to promote one of her alleged harassers and prevent her from attending Board meetings.  Accordingly,

Pierro has adequately alleged a *Monell* claim against HCSD and the Board of Education.

**F.   First Amendment Retaliation Claims**

District Defendants argue that Pierro's First Amendment retaliation claim is "legally infirm" because she fails to allege any state action, when the alleged retaliatory action took place, and that her alleged speech or expressive activity was protected speech.  (Dkt. No. 11, Attach. 1 at 19-20.)  District Defendants further contend that Pierro's failure to identify specifics as to the content of her speech and the time-line of District Defendants' alleged retaliation, "preclude[s] a meaningful evaluation of whether [her] speech . . . is protected."  (*Id*. at 20.)  Pierro counters that her reports of "system wide discrimination" constitute a matter of public concern and is speech protected under the First Amendment.  (Dkt. No. 13 at 17-18.)

To adequately allege a First Amendment retaliation claim, plaintiff must plead that: "(1) h[er] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against h[er]; and (3) there was a causal connection between this adverse action and the protected speech."  *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267,

273 (2d Cir.2011) (citations omitted).  "The threshold inquiry is whether the employee spoke as a citizen on a matter of public concern."  *Seale v. Madison County*, 929 F. Supp. 2d 51, 70 (N.D.N.Y. Mar. 7, 2013).  A matter of public concern is one that "relat[es] to any matter of political, social, or other concern to the community."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Speech that touches on a topic of general importance but "primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation, such as his or her assignments, promotion, or salary, does not address matters of public concern."  *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, Pierro does not state a claim for First Amendment retaliation because she fails to include specific allegations of what she reported and this precludes the court from evaluating whether she was speaking on a matter of public concern or a personal issue related to her own situation. While reports of harassment can be considered matters of public concern, such as where a plaintiff's reports of discrimination were intended to implicate a system-wide issue or bring public attention to unlawful practices, *see Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir.

1993); *Brown v. N.Y.S. Dep't of Corr. Services*, 583 F. Supp. 2d 404, 412 (W.D.N.Y. Oct. 29, 2008), this is not the case here.  Because Pierro's proposed second amended complaint does not detail what she reported to HCSD management and the New York State Division of Human Rights, the court cannot determine whether Pierro's speech was intended to implicate a system-wide issue of harassment or, rather, concerned her own personal situation.  Accordingly, Pierro's First Amendment retaliation claim must be dismissed.[8]

## G.   **Article 78 Proceeding**

District Defendants seek dismissal of Pierro's claim under N.Y. C.P.L.R. Article 78 because, they contend, her claims for injunctive relief are moot, (Dkt. No. 11, Attach. 1 at 17), but  this argument relies on a fact not contained within the pleadings, and as such, dismissal on this ground is not appropriate.  Here, however, the court declines to exercise supplemental jurisdiction over the Article 78 claim.  While courts in the Circuit are split as to "whether courts may, in their discretion, hear Article

---

[8]  Pierro also appears to allege a First Amendment claim for prior restraint of speech. (Proposed 2d Am. Compl., ¶¶ 119, 242.)  Because District Defendants have not argued for dismissal of this prior restraint claim, (*see generally* Dkt. No. 11, Attach. 1), and Pierro alleges some facts to support the claim, Pierro's First Amendment claim survives to the extent it is based on the prior restraint of her speech by barring her from attending Board of Education meetings.

78 claims under the rubric of supplemental jurisdiction," *Kent v. New York*, 2012 WL 6024998, at *10 (N.D.N.Y. Dec. 4, 2012) (collecting cases), the court, nonetheless, has discretion under 28 U.S.C. § 1367 to decline to hear an Article 78 claim.  Thus, Pierro's Article 78 claim is dismissed.

## H.   Immunity

District Defendants contend all claims aginst defendants in their individual capaity must be dismissed because the District defendants are entitled to both absolute immunity and qualified immunity.  (Dkt. No. 11, Attach. 1 at 14, 21-22.)   Pierro counters that District Defendants are not entitled to absolute immunity because absolute immunity does not apply to "discretionary personnel decisions."  (Dkt. No. 13 at 12-13.)  Additionally, District Defendants, as Pierro argues, are not entitled to qualified immunity because they have not established that their conduct did not violate a "clearly established statutory or constitutional right[]."  (*Id.* at 15-16.)

Absolute immunity "protect[s] officials from personal liability for the performance of certain discretionary acts."  *See Ross v. Lichtenfeld*, 06 Civ. 6698, 2007 WL 9826117, at 6 (S.D.N.Y. Sept. 17, 2007) (quoting *Spear v. West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992)).  Absolutely immunity does not apply to a school district's board of education making

27

discretionary personnel decisions.  *See Harhay v. Town of Ellington Bd. fo Educ.*, 323 F.3d 206, 211-12 (2d Cir. 2003) ("Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors.")

An official is entitled to qualified immunity if his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (citation omitted).  "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his [or her] conduct was unlawful." *Burhan v. Lopez* 24 F.Supp. 3d 375, 384 (S.D.N.Y. 2014) (quoting *Anderson v. Recore*, 317 F.3d 194, 194 (2d Cir. 2003)).

Turning first to absolutely immunity, the court agrees with Pierro. The Second Circuit has made clear that discretionary personnel decisions, even when taken by public officials, do not invoke absolute immunity.  *See Harhay*, 323 F. 3d at 211.  The facts alleged here clearly demonstrate that the actions by District Defendants with repect to Pierro,

28

including promoting Stalker as her supervisor and restricting her from attending Board of Education meetings after Pierro made more than one report of harassment, were discretionary personnel decisions, rather than legislative decisions.  *See Harhay*, 232 F.3d at 211.

As to qualified immunity, the court, again, agrees with Pierro.  The alleged facts demonstrate that District Defendants were aware of Pierro's complaints of harassment, did not take action to stop the harassment, and even promoted Stalker, and later Call, and voted to suspend Pierro and bar her from school premises.  (Proposed 2d Am. Compl. ¶¶ 44-46, 60, 96.)  The court finds that no reasonable school official could have believed that ignoring Pierro's claims of harassment and then promoting one of the alleged harassers to be her supervisor was consistent with clearly established law.  Additionally, apart from District Defendants potentially contributing to the harassment by promoting Stalker, "an official's failure to remedy known sexual harassment complaints" can defeat claims of qualified immunity.  *See Burhans*, 24 F. Supp. 3d at 384-85.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Pierro's cross motion for leave to amend (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Pierro shall file the proposed second amended complaint (Dkt. No. 14 at 19-66) in accordance with Local Rule 15.1(c); and it is further

**ORDERED** that District Defendants's motion to dismiss (Dkt. No. 11) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** as to Pierro's Title VII and Title IX claims against all individual defendants; and

**GRANTED** as to all state law claims against District Defendants; and

**GRANTED** as to all Section 1983 claims against Risetto and the individual members of the Board of Education;

**GRANTED** as to Pierro's Section 1983 claims for disparate treatment and First Amendment retaliation;

**GRANTED** as to Pierro's Article 78 proceeding;

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain: Pierro's (1) Title VII claims against HCSD and the Board of Education; (2) Title IX claims

against HCSD and the Board of Education; (3) § 1983 hostile work environment claim against HCSD, Board of Education, Spindler, Boehme, and Suttmeir; (4) § 1983 First Amendment prior restraint claim against HCSD, the Board of Education, Spindler, Boehme, and Suttmeir; (5) all claims against non-moving defendants, excluding Pierro's Title VII and Title IX claims, and First Amendment retaliation claim; and it is further

**ORDERED** that District Defendants letter motion to withdraw their argument regarding lack of jurisdiction for Pierro's Title VII claims (Dkt. No. 21) is **GRANTED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 31, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge